At the last case is United States v. Keita. Mr. Hall, when you're ready, we'll hear from you. Thank you. It pleases the court, my name is Mark Hall and I represent Mohammed Keita. I believe that the briefs filed by myself and the government hopefully lay out the facts sufficiently. I'm just going to touch on a couple of factual matters because I think they relate specifically to the arguments raised in reference to what I'll describe as the Crawford issue, the second issue in my brief. This was a series of what I'll call credit card frauds or access device frauds which were committed by re-encoding the strip on the back of credit cards. I found that very interesting. This man must be pretty good. I think he coded his own name in the plastic, the raised plastic area, and then he encoded the magnetic tape with the real customer's information. That is correct. That's my understanding of how it's done and in order to do that, obviously, it employs the use of a computer and a... Didn't he have an encoding machine? He had an encoding machine which is in fact one of the counts of the indictment. I think it's the eighth or the last count of the indictment. And then would use those at mostly at Giants but at other stores such as Safeway. Can anybody get access to that type of machine? Well, I'm not... I won't say I'm necessarily an expert on that, but I believe in this case that the type of machine and maybe the government, since I wasn't trial counsel, can answer that question better. It's as simple a machine as the type when you check into a hotel and they encode the... I understand, but that information, if a credit card company issues it, it puts magnetic information there and how would he know what information is there? Can he read it? In other words... I don't know the answer to that. To know what to replace it with. I think that people who, shall we say, do this with some frequency, know what goes on the back of your credit card and knows what information it needs to replace. Because obviously in order to do that, the machine itself has to be hooked up to a computer and I believe that that allows them to, if you have the proper programming... Yes, and the issue that I really wanted to focus on is, as I said, the second issue, which I consider a Crawford issue. And that is... Now tell us what the... Is this plain error review? Excuse me, Your Honor? Are we in plain error review on this? No, I don't believe so, because this was objected to by counsel below and I believe it was preserved. But the objection was hearsay, correct? The objection was hearsay, but I believe counsel below couched it also in the context of Crawford. So I believe that it is properly preserved. But if I may, the argument is this. There are really two sets of victims in this case. We have in the indictment three victims that are named and done by initial in the indictment. And then we have... And those three individuals testified and they testified that these were fraudulent transactions. And there was actually a fourth victim who I believe possibly wasn't expected to testify but was available and testified. But we have also other subset of victims who were not named in the indictment. And in those cases, defense has no opportunity to cross-examine, to explore whether or not the transactions were unauthorized. In those cases, the material or the documentary evidence that says that these are unauthorized transactions comes solely through American Express and Chase. And in the case of American Express, the individual who testified, I think the gentleman's name was Boresky, he testifies and several what I would describe as screenshots are introduced from his computer. And they are listed as, I think it's government exhibits 1H, 1P, and government exhibit number 15. And they correspond to Joint Appendix 620 to 628. But those are... What is the evidence as to the reasons that these records were created? Well, Mr. They were created for the purpose of the trial. I mean, as I understood it, this witness said these things were done daily. It's more of an administrative type thing. I think that ultimately is a question for this court. I don't think that the person from American Express gets to define whether or not. I know that the individual says that. If we have a camera outside the courthouse and then there's an automobile accident and they get the camera film, is that testimonial? Your camera outside of the courthouse is there for security purposes only. It wasn't put there. These credit card companies monitor the accounts. They monitor where they're going on. I mean, I've been in Italy and they disapprove it all of a sudden because I didn't call them. I was going over there. And so they're constantly looking at if there's a huge amount on an account, they may call you. And they take complaints from customers that this is an overcharge or this is not my credit card or whatever. And this is just an ongoing basis because they have losses they have to pay. And so they're administering this card. And to reveal this data, this was not prepared to testify against your clients. This was to administer their operations, losses and profits and reimbursements. I respectfully disagree, and I'll tell you why I disagree with the court's analysis. When you actually look at those exhibits in the joint appendix, they provide, in a summary fashion, simply that these particular credit card numbers, there were fraud complaints about from victims. But it doesn't give a defense attorney trying the case the opportunity, as he had with the other victims in the case, to actually confront and to cross-examine them. Except they were defrauding the credit card company. In other words, the accounts that they introduced this on were related to access device fraud. Yes, I agree. And the other was an identity fraud. You do need those people. I believe that that evidence could only come to those counts. Because you have three counts of aggravated ID theft. Those clearly go to the named victims, or done by initial in this case. You've got the three access device counts. And I think that's where this evidence goes to, in addition to the evidence from the three named victims. And then the other two counts I consider possessory offenses, because they're involved. And you're not challenging that. No. You're concerned about these records that came from the two companies. That is correct. And just to be even maybe more specific, there's actually two types of records that came from those companies. And if I can distinguish, there were a set of records that were introduced, which were referred to as CCP reports, or CPP reports, Common Points of Purchase. And those were done specifically to determine where the fraud was occurring. In other words, if we can narrow it down to the one place where all of these victims had their credit card used less legitimately, then maybe that's the place where it was compromised. In this case, a particular restaurant in Rockville was named as that location. That is different, though, than the portion of the records which also came in, and that we are complaining about here, in which the records come in to prove the point that the transactions are fraudulent. In other words, those are records that come in to prove that I, the account holder, did not give Mr. Coyette permission to use my card. Yeah, but that's not the admissibility evidence. That goes to whether they linked them up and cross-examination about the documents. The documents are business records. They come in. They're clearly relevant. And whether they demonstrated fraud is something you could argue, and you could cross-examine the people as to why they think it demonstrates fraud. And the jury can make that determination. But I don't see how this is a profit. But that's the whole point. As a trial counsel, you do not have the ability. Who do you want to cross-examine? I want to cross-examine the people who are saying that my account was compromised. Except that that is not the object. This is a fraud on the credit card company, access device fraud. But in order for it to be a fraud, you have to have the element of that there was no permission for someone to have used that card. So they received complaints from 357 consumers who said, I didn't charge that. And the credit card company puts that in the record. My wife does that all the time. I didn't charge that. And that's how we get out of our monthly bills. Would you like to strike that from the record, Your Honor? Yes. I want the record to show that was a jest. They have those complaints. Now the question is, they have to investigate. They're going to have to reimburse the client or take it off the account. And they're going to have to bear the loss because they paid the merchant. So they're now investigating in their own methods how to do it. Now if they did it deficiently, you can challenge that. But there's no reason why the complaining witnesses who said it's not my account have to be there. They could be there, but they don't have to. And in the other instance with the ID theft counts, the government did have those witnesses there. And defense was able to cross-examine them. There's a different element to the offense, right? There's absolutely different elements to the offense. But since the element of fraud— Aggravated identity theft. You have to steal the identity of some person. But since you have the element of fraud, it's our argument that you needed to have the victim there to testify to that. You're touching on a testimonial aspect. If it's testimonial evidence, then you want to fit under profit. And it seems as though you're saying the CCPs, whatever they're called, are not. Okay, you'll say they're not. It's these other records, these ones they then want to verify a match-up as a fraud. Those are the ones you'll challenge as being testimonial. Yes. But in doing it, it would seem to me, how have you established that the records were created for the purpose of trial? Well, I think— Wouldn't they want to know? I mean, it looks like to me it's still in the regular practice. They do these things, at least from the testimony, and they want to know these things. And if they're getting these reports from—whether it's from Judge Niemeyer or Judge Niemeyer's wife— They want to know what's going on here. I mean, I guess it's—I can see in some instances not every business record is going to come in. Sometimes it might be testimonial if you can show that little additional thing there that profit seems to link up. It's for the purpose of trial or prosecution. But here, these records were just going to exist anyway. I can't remember the exhibit number, but one of the three exhibits that I cited, when the court actually looks at the exhibit in the joint appendix, you'll see that that is contained in an email that is sent from the credit card company to the investigator, Detective Hill. Clearly, that is being done solely for the point of preparing the case. If we go back to the original, when we asked about whether you objected or not, if we're looking at plain error, you're going to have a high hurdle here in terms of prejudice, because, I mean, you're talking about stuff that was videotaped. I understand that, Your Honor. But you've got the actual stuff going on here. So you're not going to survive plain error. I know. Is that something you can accept? Yes. So you've got to basically—the record has to show, as Judge Flanagan pointed out, that I see objection to hearsay. I'm not sure that equates to an objection to this kind of evidence here. I mean, hearsay is—well, business records are hearsay by definition. Well, of course, and of course, they're one of the exceptions to the hearsay rule. And, you know, we accept that. We also objected, and I realize my time is slipping away, but we also objected— and it was also briefed in this case—the issue of relevance, and that was the issue of if you've got named victims, why do we need to bring in all of these other victims unless it simply is being done to boost the numbers, which eventually the client faces when it comes to sentencing? That was the second issue we brought—or, actually, the third issue of the brief. Do you believe it's relevant to the three counts on access fraud? But you can prove the access fraud also because you've got your three named victims. They wanted to prove it, the scope of the fraud, and through the documents. And they had to show it was knowing. They could also have proved the scope of the fraud by naming more victims and bringing them in. Yeah, they could have done a lot of these things. Does that make it clear that they didn't? They chose to narrow their case to three victims. We believe they should be stuck with that. Okay, thank you. I reserve five minutes. Five minutes. All right, Mr. Romano. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. My name is Sujit Raman. I'm the appellate chief for the District of Maryland here on behalf of the United States. I would like to begin, Your Honors, with the issue about the business records. Judge Winn, your question, respectfully, I think was spot on. This Court— It seems like the CPP, as I understand it, that's not really what he's arguing about. It's these other database-type records that connect it up that the defendant wants to say, that's testimonial. Right. And so to do that, get that information in, you're the witness. Right. Let me address that in two ways, Your Honor. First, the Court is correct to observe that it is a plain error standard of review. The defendant did not raise a confrontation claim in the District Court. And, in fact, this Court has published— You don't view the fact that you say here, say you encompass that. No, it doesn't. And, Your Honor, this Court has actually published an opinion.  I'll file a 20HA letter once I'm back in the office. Since the briefing in this case, this Court has explicitly held that unless you specifically raise a confrontation claim in the District Court, it's waived, or at least it's plain error review on appeal. So within the— If it's plain error, then I heard the defendant's attorney say that he acknowledges that's a pretty tough hurdle to overcome. Right. That's exactly right, Your Honor. It is plain error. But let me address Your Honor's question. Why is this information not testimonial? We haven't gotten into it too much in the briefs, but as the Court is aware, under the Supreme Court's jurisprudence in the confrontation area, there has to be some aspect of formality in the underlying statement. Justice Thomas has provided the concurring vote in a number of these decisions, Bullcumming, Melendez-Diaz, and others. And for Justice Thomas, the lodestar of the confrontation analysis is whether there is some indicia of formality. It has to be under oath. There has to be some sense that this statement is a formalized statement. If a consumer calls up the 1-800 number on the back of their credit card and says, I think my credit card has just been used in an unauthorized way, there is no indicia or formality in that statement. It's not under oath. It's not under the penalties of perjury. Well, the formality is really nothing but a surrogate. We're stating that it's a deposition, if that's a word, testimony as if it were in court. Correct. But it's out of court. That's right. And when a person complains that there's a charge that doesn't belong on my credit card, I would think the very first purpose that the person is saying that is to get it off the credit card. Exactly. It's not to provide evidence. And if the credit card company pursues it or writes it off as a loss is another thing. That's right. But it is not a statement that's intended or focused on an adversarial proceeding or prosecution. Exactly right. I think this area is a tough area, but I'm not sure that the complaints by victimized credit card users are testimonial statements. I think you're right, Judge Niemeyer. And just to follow up on that point, I think this case is certainly not the case in which to explore the nuances of this issue in the jurisprudence, because it was not raised in the district court below. In fact, the issue that the trial counsel raised in the district court has been forfeited on appeal, because he's not really arguing hearsay generally in this court. He's arguing testimoniality. And, again, for the Crawford reasons that we've described, I don't think there's any real issue here of testimonial hearsay. And, of course, it's all harmless error, even if it was, because the government did call various actual victims who testified and said, you know, my credit card was used, and when I look at the video, that's not me, and I certainly didn't authorize that individual on the video to use my credit card. So it's all harmless error regardless, because the government certainly provided enough evidence to support the access device fraud charges as well as the aggravated identity theft charges. Those are the evidentiary points, Your Honor. I'm certainly not going to raise the speedy trial issue to the extent that the defendant hasn't gone out of his way to argue it in this court. Well, we'll take them on as brief. Thank you very much. There are no further questions, Your Honor. Thank you. Mr. Hall. Yes, Your Honor. Comments? Absolutely, I agree with the court that the first issue raised in the brief, I'm perfectly willing to submit just on that and not argue it. Let me address just a couple of things, and as I think we all agree it comes down to the question of what is or is not testimonial. And obviously the government and the defense disagree as to that issue. How many charges are affected by it? Do you agree yet on this plain error? Because you said it was a plain error. I would say that. You cited a specific case that said that you're saying the objection is not going to be enough. You've got to be able to do it. So you are here on plain error. No, I understand that, Your Honor. And I understand the mountain that. You said you are here on plain error. Do you understand that? Yes. So now you're dealing with. So even if it is error, where are you going to go with it? You've got this video. You've got all this other direct information here. Where is it going to go? The problem is that by doing the way it was done in this case, the jury hears about a multitude of victims other than the victims that were called. And those are individuals that the trial counsel below had no opportunity to cross-examine. The trial counsel was able to cross-examine four people who were, shall we say, complaints in this case. They were able to cross-examine three named individuals, and I believe another individual who was also called. But they never had the opportunity to cross-examine. In those four instances where people actually testified, they could view the videotape during trial and they could say, that's not me and I didn't authorize that transaction. And the defense had a chance to cross-examine that. By admitting these reports, the defense had no opportunity to do any cross-examination of anyone except for the person from American Express or from Chase. They were not able to cross-examine anyone concerning whether did you give your credit card to somebody else? Did you authorize someone else to use it? And considering the accounts that that relates to. But if you don't bring it up, you're in the middle of trial, and you say, well, you didn't bring the witnesses in here, but this is on appeal, you say that. How serious was it to the defendant if you were sitting there and you didn't ask for those witnesses? Then he says, oh, by not bringing those witnesses in, terrible. And that's why we have plain error reviews. So your points might be stronger than an objection. Oh, really? But you didn't think it was serious? I know the court knows that I didn't try. But trial really gives you a very difficult position to stand before us now. It does. However, our belief is that because it is a confrontation clause issue, and as I said, I also briefed it on the question of relevance, but because it is a question of a fundamental constitutional right that the Counsel, just to narrow the issue, is this really just related to American Express because Mr. Pena came to court and testified, and he intersects with the Chase? Yes. No, and it doesn't. I believe because there were more transactions involving American Express, I had probably referred to them in that way, but it involves both American Express and Chase. But didn't you have Mr. Pena there to examine? He's the Chase affiant? No, Your Honor. I believe Mr. Pena was one of the victims, and the individual from Chase, and the name escapes me at the moment. So maybe I've mistaken. And I apologize. Did someone from both Chase and American Express testify? Someone from both Chase and from American Express testified. So they could have been cross-examined on their methods and what they were doing and how they used it. You could have undermined their methods if there was not a link-up or it was pretty shabby. That all could have been pointed out during cross-examination. Absolutely. But the one thing that couldn't have been done in those instances is to have someone view the video and say, that wasn't me. Thank you, Your Honor. Okay. Mr. Hall, I understand you're court-appointed? Yes. I also want to recognize that service to the court, and thank you very much. Thank you, Your Honor. And we'll adjourn court for the signing die and come down and greet counsel. This honorable court stands adjourned, signing die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Louise W. Flanagan